UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                            Case No. 20-20545
                                 Honorable Victoria A. Roberts

MARQUEZ GOINS,

     Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF No. 22]

## I.    INTRODUCTION

At 3:30 a.m. on July 19, 2020, Florence Osborne ("Osborne") called 911 and said, "[h]ello, 8XX Calumet Street – my daughter [sic] boyfriend fightin' her and he got a gun." Twenty minutes later, four police officers arrived at 8XX Calumet Street ("the apartment") where Osborne reiterated her concerns and presented police with a key. Without a warrant, all four entered the home and found Marquez Goins ("Goins") seated next to Osborn's daughter – Erica Arnold – with his right hand hidden behind Arnold's back. They repeatedly ordered Goins to stand up. Instead, Goins grabbed Arnold's waist and clung to her. Officers separated Goins, detained him, and seized a .40 caliber Smith & Wesson handgun from his pants pocket.

The government charges Goins with one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Goins argues in his motion that the officers' warrantless entry violated the 4th Amendment. He seeks to suppress the gun and any statements he made to police regarding the weapon.

The government says exigent circumstances justified the officers' entry. It also says their entry into the apartment was legal, because Osborne had apparent authority and consented to their entry.

However, during the motion hearing the government called only one witness: Officer Muhamed Vilic. Vilic did not provide testimony concerning Osborne's apparent authority. Instead, he said he received actual authority from a female inside the apartment. Upon the conclusion of Vilic's testimony, the government offered to withdraw its consent argument. Now, it relies solely upon exigent circumstances to justify police entry into the apartment. Accordingly, the Court need not address the issue of actual or apparent authority.

"When faced with a motion to suppress based on the Fourth Amendment, the government must establish by a preponderance of the evidence that the police conduct did not amount to an unreasonable search and seizure." *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

Based upon the testimony and evidence presented at the evidentiary hearing, the Court finds that the government met its burden. The warrantless entry into the apartment was permissible due to the "exigent circumstances" exception to the Fourth Amendment.

The Court **DENIES** Goins' motion.

## II.   BACKGROUND

On July 19, 2020 at approximately 3:30 a.m., Osborne called 911 and, after providing the address of the apartment, explained "[m]y daughter [sic] boyfriend fightin' her and he got a gun." [Ex. 1, 911 Call]. The operator asked Osborne what the boyfriend was doing with the weapon and Osborne responded, "I don't know what he's doing with it. I just got a call he [sic] fightin' her and he [sic] got a gun." *Id*.

Four officers received the radio call and went to the scene: Muhamed Vilic ("Vilic"), Larry Jenkins ("Jenkins"), Jarrell Evans ("Evans"), and M. Mahgoub (collectively, "Officers"). Their incident reports vary regarding what the radio call communicated. Vilic claims that dispatch told him there was domestic violence and assault and battery in progress, and that a male at the apartment had a gun. [ECF No. 24-2, PageID.116]. Evans reported that he was radioed only regarding domestic violence in progress [ECF No. 24-2, PageID.118].

3

As Jenkins and Vilic walked towards the apartment, Osborne approached them with keys in her hand. She informed them that she called 911, that her daughter's boyfriend was assaulting her inside the apartment and that he had a gun.

The apartment had a large front picture window. Goins says he and Arnold would have been visible to anyone looking in and that they sat "peacefully" on a couch. Vilic testified he did see them on the couch, but that Goins had his arm behind Arnold's back. He also testified that he observed an expression of fear on Arnold's face. Vilic testified that his training regarding the investigation of domestic violence cases in both the military and the police force, emphasizes the importance of physically separating the alleged victim and the perpetrator. The separation of Arnold and Goins became his focus.

Officers approached the door. Vilic says it was slightly ajar. He says they announced themselves and walked inside after a female inside the apartment gave permission to enter.

Officers found Goins seated next to Arnold on the couch with his right hand behind Arnold's back. They made multiple demands for Goins to stand. They asked him if he had a weapon. Instead of standing, Goins wrapped his arms around Arnold's waist as she stood up. Officers then

restrained Goins and searched him. The search revealed a .40 caliber Smith & Wesson handgun in his pants pocket. Goins told Officers he had the handgun for protection, he was a convicted felon, and the gun was not his. [ECF No. 24-2, PageID.116]. Once outside, however, Goins shouted "get my gun and my keys, bro." [Vilic 1 video, at 11:10–16].

After Officers detained Goins, they interviewed Arnold and Osborne. Arnold explained that earlier that night Goins got into an altercation with her brother, hit Arnold in the head and face with an open hand, and bit the side of her head. After Officers detained Goins, they observed bruising and minor cuts on Arnold's lips and face.

On January 27, 2021, Goins filed a Motion to Suppress both the weapon and any attendant statements. The motion is fully briefed. The Court heard oral argument on June 8, 2021.

## III.   ANALYSIS

Goins argues Officers violated his Fourth Amendment rights when they entered the apartment because: (1) at the time of entry Officers did not have probable cause or exigent circumstances to justify a warrantless entry; (2) Osborne had neither actual nor apparent authority to consent to the search of the apartment; and (3) the gun and attendant statements should be suppressed as fruit of the poisonous tree.

5

The abandoned authority to enter argument aside, the government says Osborne's 911 call, their observations at the scene before entry, and the information Osborne reiterated to Officers amounted to exigent circumstances. Finally, it argues even if the Officers' warrantless entry violated the Fourth Amendment, the gun and statements should not be suppressed because the Officers did not act with deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.

### A.      Exigent Circumstances Justified the Officers' Entry

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Caniglia v. Strom*, No. 20-157, 2021 WL 1951784, at *2 (U.S. May 17, 2021). The very core of this guarantee is the right of a person to retreat into his own home and there be free from unreasonable governmental intrusion. *Id.* at *2 (citing *Florida v. Jardines*, 569 U.S. 1, 6 (2013)). This reasonableness requirement generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a home. *See Payton v. New York*, 445 U.S. 573, 585-586 (1980). However, there are a few well-defined and carefully circumscribed circumstances in which a warrant will not be required. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978).

6

Exigent circumstances are situations where "real immediate and serious consequences" will "certainly occur" if the police officer postpones action to obtain a warrant. *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003) (internal quotations omitted). There are four situations which commonly give rise to exigent circumstances: (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others. *Id*. at 253.

The government contends that the warrantless entry into the apartment presents the fourth situation – referred to as the "emergency aid exception." "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). The need to protect life or avoid serious injury is justification for what would be an otherwise illegal intrusion. *Id*.

At the time they entered, Officers reasonably believed that the circumstances were urgent and exigent. This encounter with Goins was triggered by Osborne's 911 call reporting an emergency. Osborne communicated that at that moment a man physically abused her daughter with a gun. Some courts have found that, under certain circumstances, a

7

911 call alone – reporting an emergency – may be enough to support a warrantless search of a home, *See*, e.g., *United States v. Cunningham*, 133 F.3d 1070, 1072–73 (8th Cir.1998). The Sixth Circuit has stopped short of making such a pronouncement. *Thacker* at 254. Regardless, a call to emergency services is highly relevant when evaluating exigency. *Smith v. City of Wyoming*, 821 F.3d 697, 712 (6th Cir. 2016).

Once Officers arrived at the scene it is undisputed that Osborne told them that Goins still has a gun and had hit or was hitting her daughter. The presence of a weapon is yet another factor which supports the Officers' conclusion that exigent circumstances existed. In *United States v. Bates*, the Sixth Circuit held that "[t]he presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent." 84 F.3d 790, 795 (6th Cir. 1996). Upon arrival, the Officers could see Arnold and Goins still in proximity to one another. The 911 tape, Officers' observations, reports and testimony, demonstrate that they were aware of the possibility that a firearm could be used to harm Arnold or them as they investigated. The seriousness of a firearm and the damage it can inflict is obvious.

The totality of the circumstances and the uncertainty of the situation justified entry to secure the safety of Arnold, the police and any other occupants of the home.

## B.    Good Faith Exception to the Exclusionary Rule is Not Applicable

The Court need not discuss the good faith exception to the exclusionary rule since the Officers' warrantless entry was legal. *See United States v. Ward*, 967 F.3d 550, 554 (6th Cir. 2020) (the "good faith" exception to the exclusionary rule is for evidence seized in "reasonable, good-faith reliance on a search warrant that is subsequently held to be *defective*.") (emphasis included).

## IV. CONCLUSION

Officers' search of the apartment on July 19, 2020 complied with the strictures of the Fourth Amendment. The evidence recovered and statements made by Goins need not be suppressed.

The Court **DENIES** Goins' Motion to Suppress [ECF No. 22].

**IT IS ORDERED**.

s/  Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  June 9, 2021

9